UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-cr-20190 |
| Plaintiff, | JUDGE: Hon. Matthew F. Leitman |
| Vs. | |
| BRANDON M. EDWARDS, | |
| Defendant, | |

_____

| | |
|---|---|
| BLAINE LONGSWORTH | GLENN M. SIMMINGTON P33626 |
| Assistant United States Attorney | Law Office of Glenn Simmington, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 600 Church Street | 503 S. Saginaw Street, Ste. 700E |
| Flint, MI  48502 | Flint, Michigan 48502-1861 |
| Phone: (810) 766-5177 | 810-820-3076 |
| Blaine.Longsworth@usdoj.gov | gsimmington@gmail.com |

_____

**COMBINED**
**MEMORANDUM OF LAW IN REPLY TO GOVERNMENT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

**and**

**SUPPLEMENTARY REPLY TO GOVERNMENT RESPONSE OPPOSING MOTION FOR COMPASSIONATE RELEASE**

The government devotes a significant portion of its Notice of Supplemental Authority, [ECF No. 36], simply to preserve an issue. Specifically, as the

1

government previously argued, (in *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020)), it preserves here its position that USSG Section 1B1.13 *is* an "applicable" policy statement for defendant-initiated compassionate release motions, *and* that USSG Section 1B1.13 *cmt* Note 1(A)(ii)'s *enumerated* reasons for granting compassionate relief remain *exclusive*, even after the First Step Act. That Note's "catchall" provision, the government argues, delegates to the BOP (and not to the courts) the task of identifying *other* reasons to grant compassionate release.

As its vehicle to preserve that argument here, the government brings to this Court's attention *United States v. Jones*, ___ F.3d ___, No. 20-3701, 2020 WL 6817488, *6 (6th Cir. Nov. 20, 2020).

Plainly, the government has every right to preserve its legal argument that "[t]he Jones majority opinion [concluding] that USSG Section 1B1.13 is not an 'applicable' policy statement for defendant-initiated compassionate release motions . . . is incorrect." (See Government Notice of Supplemental Authority, pp.1-2.) But it does not follow that the "*Jones* majority" opinion's conclusion and analysis lack majority support, among the several Courts that have considered, and ruled upon, the issue. The reverse, in fact, is true.

A. <u>The "weight of authority" runs counter to the government's urging that USSG Section 1B1.13, even after the First Step Act, is still an "applicable" policy statement for defendant-initiated compassionate release motions, and therefore remains binding.</u>

2

Federal courts may reduce a prisoner's sentence under the circumstances outlined in 18 U.S.C. Section 3852(c). Under Section 3852(c)(1)(A)(i), a court may reduce a prisoner's sentence "if it finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." Prior to 2018, only the Director of the Bureau of Prisons ("BOP") could file these kinds of "compassionate-release motions." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

Congress' 2018 passage of the First Step Act, however, "amend[ed] numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *Brown*, 411 F. Supp. 3d at 448 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)). In an effort to improve and increase the use of the compassionate-release process, the First Step Act amended Section 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role.

Congress made this change in Section 603(b) of the First Step Act. Section 603(b)'s purpose is enshrined in its title: "Increasing the Use and Transparency of Compassionate Release." Section 603(b) was initially a standalone bill that "explicitly sought to 'improve the compassionate release process of the Bureau of

3

Prisons.'" *Brown*, 411 F. Supp. 3d at 451 (quoting Granting Release and Compassion Effectively Act of 2018, S. 2471, 115th Cong. (2018)).

The amendment to Section 3852(c)(1)(A) provided prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. Section 3852(c)(1)(A). These changes gave the "district judge . . . the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition."

Congress never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. Section 994(t). Rather, Congress directed the Sentencing Commission to define the term. *Id.* The Commission did so prior to the passage of the First Step Act, *but has not since updated the policy statement. See* U.S.S.G. Section1B1.13 *cmt.* n.1(A)-(D). In subsections (A)-(C) of an Application Note to U.S.S.G. Section1B1.13, the Commission enumerated three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at

least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver. *See id. cmt*. n.1(A)-(C).

*Critically, here*, however, the policy statement also added a catchall provision that gave the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. *Id. cmt*. n.1(D).

Thus, implicitly recognizing that it is impossible to package all "extraordinary and compelling" circumstances into three neat boxes, the Commission made subsections (A)-(C) non-exclusive by creating a catchall that recognized that other "compelling reasons" could exist. *See United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that Section1B1.13 never "suggests that [its] list [of criteria] is exclusive"); *United States v. Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) ("Read as a whole, the application notes suggest a flexible approach . . . [and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.").

*And notably, here*, the Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is

5

now clearly outdated. The very first sentence of Section 1B1.13 constrains the entire policy statement to motions filed solely by the BOP. And an Application Note also explicitly confines the policy statement to such motions. *See* U.S.S.G. Section 1B1.13 ("Upon motion of the Director of the [BOP] . . . the court may reduce a term of imprisonment . . . ."); *id.* at *cmt* n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the [BOP]."); *see also Brown* at 449 (describing the old policy statement as "outdated," adding that the Commission "has not made the policy statement for the old [statutory] regime applicable to the new one."); *United States v. Ebbers*, --- F. Supp. 3d ----, 2020 WL 91399, at *4 (S.D.N.Y. 2020) (describing the old policy statement as "at least partly anachronistic").

Accordingly, a *majority* of district courts have concluded that the "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under Section 3852(c)(1)(A)." *United States v. Beck*, --- F. Supp. 3d ---- , No. 13-cr-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Brown*, 411 F. Supp. 3d at 451 ("[T]he most natural reading of the amended Section 3582(c) . . . is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July

6

11, 2019) ("[D]eference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role."); *United States v. Redd*, 2020 WL 1248493, at \*7 (E.D. Va. Mar. 16, 2020) ("Application Note 1(D)'s prefatory language, which requires a [catchall] determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance. . . . [R]estricting the Court to those reasons set forth in Section1B1.13 *cmt*. n.1(A)-(C) would effectively preserve to a large extent the BOP's role as exclusive gatekeeper, which the First Step Act substantially eliminated . . . ."); *United States v. Young*, 2020 WL 1047815, at \*6 (M.D. Tenn. Mar. 4, 2020) ("[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."); *Maumau*, 2020 WL at \*2-\*3 (D. Utah Feb. 18, 2020) (collecting cases).

While it is true that Section 3852(c)(1)(A) requires courts to act consistently with *applicable* policy statements under the Sentencing Guidelines, the plain fact remains that the Sentencing Commission simply has not issued a policy statement that addresses prisoner-filed motions post-First Step Act:

> *There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions filed by the [BOP] Director and makes no mention of motions filed by defendants . . .*

7

> *The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants.*

*Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *5 (citations omitted).

Indeed, the introductory sentence of Section 1B1.13, "*[u]pon motion of the Director of the [BOP] . . . the court may reduce a term of imprisonment*," limits the policy statement's scope to a procedural scheme exclusively involving the BOP that does not exist anymore. And *comment* 4 of Section 1B1.13's Application Note expressly states that "[a] reduction *under this policy statement may be granted only upon motion by the Director of the [BOP].*" Accordingly, by its own terms, the scope of the old policy statement is clearly outdated and, at the very least, does not apply to the entire field of post-First Step Act motions.

In other words, for prisoner-filed motions, there is a gap left open that no "applicable" policy statement has addressed. Therefore, the policy statement may provide "helpful guidance" but does not limit the Court's independent assessment of whether "extraordinary and compelling reasons" exist under Section 3582(c)(1)(A)(i). *See Beck* at *6.

Based, therefore, on the applicable "weight of authority," whether the *Ruffin* opinion, the *Jones* opinion, or any other opinion, may have utilized *dicta* while setting forth an analysis of whether defendant-initiated motions for compassionate

8

release must face the rigors of (or be "bound" by) Section 1B1.13, is without relevance here. That is an academic question, (or, in the present context, a "procedural" one), which this Court need not answer.

## SUPPLEMENTARY REPLY TO GOVERNMENT RESPONSE OPPOSING MOTION FOR COMPASSIONATE RELEASE

Brandon Edwards, Defendant, hereby supplements his November 23, 2020 Reply to Government Response Opposing Motion for Compassionate Release [ECF No. 35], as follows:

A. Milan Facility Developments:

Since Mr. Edwards' November 23, 2020 filing, (specifically, on December 16, 2020), in an unrelated Eastern District of Michigan judicial opinion, the Honorable David M. Lawson adopted the United States Government's assertion that "[FCI Milan] is besieged by an ongoing and escalating outbreak of the [COVID-19] disease." (*United States v. Michael Hue Thompson*, Case No. 19-20380, ECF No. 108, PageID.757.). Nothing, so far as Mr. Edwards is aware, has changed within FCI Milan in the roughly 2 weeks that have passed since the government's December 16, 2020 acknowledgment.

This exacerbating situation, coupled with Mr. Edwards' progressively worsening overall physical condition, (as laid out in his November 23 filing), only heightens – and certainly does not diminish – his risk of mortality while he remains at the facility. This Court, *and at this stage, apparently, only this Court*, can provide a remedy for Mr. Edwards' "extraordinary and compelling need" to be released.

B. Mr. Edwards' Medical Condition, and Medication Regimen, Developments:

In addition to the asthma-related medications referenced in Mr. Edwards' November 23, 2020 filing(s), (which filings described the increasing need for such medication, over the time Mr. Edwards has been housed at FCI Milan), this Court should also take note of his ongoing need for medication to control his hypertensive disorder, (or high blood pressure disease). Specifically, Mr. Edwards has been prescribed hydrochlorothiazide, once per day. (See attached **Exhibit F**.)

C. Further Section 3553(a) Factors Information:

Mr. Edwards hereby adopts by reference the information set forth in the several letters of support that are attached, as **Exhibit G1** through **G6**.

## CONCLUSION

Based upon all the above-cited authorities, in addition to those cited in Mr. Edwards' previous filings in support of his request for a compassionate release-based reduction in sentence, and upon the reasons set forth throughout, Mr. Edwards respectfully requests that this Honorable Court will grant his motion for a compassionate release/reduction in sentence.

RESPECTFULLY SUBMITTED,

Dated: January 2, 2021

s/Glenn M. Simmington
GLENN M. SIMMINGTON  P33626
Attorney for Defendant
503 S. Saginaw St., Ste. 700E
Flint, MI  48502
(810) 820-3076
gsimmington@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 2nd day of January 2, 2020, the above **Combined Memorandum of Law in Reply to Government Notice of Supplemental Authority and Supplemental Reply to Government Response Opposing Motion for Compassionate Release**, and this Certificate of Service, were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Glenn M. Simmington
GLENN M. SIMMINGTON  P33626